IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MOHAMED G.H. AHMED, M.D.,                    07-CV-1091-BR

       Plaintiff,                          OPINION AND ORDER

v.

MID-COLUMBIA MEDICAL CENTER,
DUANE W. FRANCIS, and
THOMAS NICHOL, M.D.,

       Defendants.


JEFFREY M. EDELSON
LYNN REIKO NAKAMOTO
Markowitz Herbold Glade & Melhaf, PC
1211 S.W. Fifth Ave., Suite 3000
Portland, OR 97204
(503) 295-3085

       Attorneys for Plaintiff

MARYANN YELNOSKY
EMILY Q. SHULTS
DAVID H. WILSON , JR.
Bullard Smith Jernstedt Wilson
1000 S.W. Broadway, Suite 1900
Portland, OR 97205
(503) 224-8851

       Attorneys for Defendants


1   -   OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the Motion (#65) for Partial Summary Judgment filed by Defendants Mid-Columbia Medical Center (MCMC); Duane W. Francis; and Thomas Nichol, M.D., and Defendants' Objections to Declarations filed in support of Plaintiff's Response to Defendants' Motion for Summary Judgment.[1]

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion as follows:

1.  As to Plaintiff's Claim Six against Defendants for racial discrimination in violation of 42 U.S.C. § 1981, the Court:

a.  **GRANTS** Defendants' Motion to the extent that Plaintiff's claim is based on Defendants' submission of reports about Plaintiff to the National Practitioner's Data Bank and the Oregon Board of Medical Examiners (OBME);

b.  **DENIES** Defendants' Motion to the extent that Plaintiff's claim is against Francis and MCMC on the ground that they impaired Plaintiff's rights under his employment contract and lease agreement; and

c.  **GRANTS** Defendants' Motion to the extent that Plaintiff's claim is against Dr. Nichol on the ground that he impaired Plaintiff's rights with respect to his employment

---

[1] Defendants' Objections were part of their Reply in support of their Motion for Partial Summary Judgment.

2   -  OPINION AND ORDER

contract and lease agreement.

2.    As to Plaintiff's Claim Nine against MCMC for race,
national origin, and religious discrimination under Oregon
Revised Statute § 659A.030, the Court:

a.    **GRANTS** Defendant's Motion to the extent that
Plaintiff's claim for race discrimination arises out of
Defendants' termination of Plaintiff's employment and the act of
changing the locks on his rental home;

b.    **DENIES** Defendants' Motion to the extent that
Plaintiff's claim for race discrimination arises out of
Defendants' submission of reports to the Data Bank and the OBME;
and

c.    **GRANTS** Defendants' Motion to the extent that
Plaintiff's claim is based on national origin and religious
discrimination.


## <u>BACKGROUND</u>

The following facts are undisputed or, if disputed, are
viewed in the light most favorable to Plaintiff.

At all material times, Plaintiff Mohammed G.H. Ahmed, M.D.,
was a resident of Oregon and is an Egyptian national and a
Muslim.  Defendant MCMC is an Oregon nonprofit corporation that
owns and manages a group of community health-care clinics in The
Dalles, Oregon.  Defendant Duane W. Francis is the chief

3   -   OPINION AND ORDER

executive officer of MCMC.  Defendant Thomas Nichol, M.D., is the
medical director for the hospitalist program at MCMC.

On February 16, 2006, MCMC hired Plaintiff as a hospitalist.
Plaintiff asserts he was recruited by Mark Ackley, the hospital's
executive director, and Tom Hodge, M.D., the hospital's medical
director, to lead MCMC's "fledgling" hospitalist program.
Plaintiff states he negotiated the terms of his employment with
Ackley, who also offered Plaintiff the position, and Ackley
presented the terms to Francis, who approved the contract.

MCMC owns two houses that it rents to employees and that it
usually rents to assist physicians when they first arrive in The
Dalles before they have secured housing.  Plaintiff leased one of
these houses from MCMC under a six-month lease, which was to
expire on February 28, 2007.

Plaintiff's employment contract was effective from June 30,
2006, through June 30, 2007.  Plaintiff, however, was unable to
start his employment until he completed the credentialing process
by the OBME.  Accordingly, Plaintiff began working for MCMC on
September 1, 2006.  Before his employment commenced, Plaintiff
learned that Ackley had left MCMC and that MCMC had asked
Dr. Nichol to direct the hospitalist program.

During his first six weeks of employment, Dr. Nichol became
aware of a number of issues regarding Plaintiff's patient care
from other MCMC staff and from his own observations.  Dr. Nichol

4   -  OPINION AND ORDER

listed his concerns in a memorandum to Plaintiff on October 6, 2006.  Plaintiff asserts the information in the memorandum was inaccurate.  Plaintiff and Dr. Nichol informally discussed some of the issues that Dr. Nichol raised.  At the time they discussed those issues, however, Plaintiff contends he did not have access to the charts of the patients at issue, and, therefore, Plaintiff did not have a meaningful opportunity to respond.

At some point during Plaintiff's employment, Plaintiff requested Dr. Nichol to cover for him so Plaintiff could attend Friday prayers.  Plaintiff contends Dr. Nichol later reprimanded Plaintiff for leaving his shift to attend prayers, but Defendants assert Plaintiff was reprimanded because Plaintiff did not provide sufficient notice to Dr. Nichol before requesting Dr. Nichol to cover his shift.  In addition, Dr. Nichol asked Plaintiff to tell him about "halal," which refers to Muslim food practices.  Plaintiff explained it to him and later overheard Dr. Nichol repeat the explanation to another doctor in a tone Plaintiff felt was disrespectful.

On October 16, 2006, Dr. Nichol received more complaints about Plaintiff from hospital staff.  Because of the complaints, Dr. Nichol was concerned about Plaintiff's suitability as a hospitalist.  After consulting other doctors at MCMC, Dr. Nichol concluded Plaintiff should no longer see patients, and he informed Francis of his conclusion.

On October 22, 2006, Francis signed a letter addressed to Plaintiff in which he stated Plaintiff's employment was terminated because the medical group had determined he was a danger to patients and to others.  Francis prepared this letter in case Dr. Nichol decided to terminate Plaintiff's employment while Francis was out of town.

On October 23, 2006, during Eid, which is the Muslim holiday marking the end of the month-long fast of Ramadan, Dr. Nichol called Plaintiff in New Jersey where Plaintiff had arranged to observe Eid with his family.  Plaintiff and Dr. Nichol discussed the new problems that had been brought to Dr. Nichol's attention.  Again, however, Plaintiff did not have the benefit of assessing the charts for the patients at issue during the discussion.  At the end of the call, Dr. Nichol terminated Plaintiff's employ-ment.  At no point were the complaints about Plaintiff the subject of a formal peer-review process.

On November 4, 2006, Plaintiff returned to The Dalles to remove his belongings from the rented house.  His key, however, would not fit into the lock; there was not any notice posted on the house indicating a problem; and Plaintiff could not reach anyone at MCMC.  He eventually called the police, who helped him to enter the house.

After Plaintiff's termination, Lois Shetterly, the medical staff coordinator for MCMC, indicated to her supervisor, Dianne

Storby, that MCMC might be required to report Plaintiff's termination to the National Practitioner's Data Bank and the OBME.  Shetterly conducted some research, consulted with counsel for MCMC, and concluded MCMC should make a report to the Data Bank and the OBME.  Storby passed on her recommendation to Francis, and Francis approved her recommendation.  Shetterly then prepared and submitted a report to the Data Bank, a copy of which was also sent to the OBME, that included seven alleged instances of Plaintiff providing substandard care.  MCMC did not give Plaintiff notice of the report before sending it nor give him the opportunity to object to the report.

The report included the following "reported incidents": (1) misreading a patient chart and treating a urinary-tract infection with high potency antibiotics; (2) listing a troponin level on a patient's chart as normal when it was actually seven times the normal level; (3) treating an anemic patient with "normal serum iron with IV iron"; (4) diagnosing a patient as cortisol-deficient based on a blood test performed at the wrong time of day that resulted in the patient being treated with solumedrol, which worsened the patient's diabetes; (5) treating a hyperkalemic, hypotensive patient with ace inhibitors; (6) failing to make a referral telephone call on a patient with a positive exercise stress test after telling the patient's primary-care physician that he would do so; and (7) using

7  -  OPINION AND ORDER

oxycontin for "as needed" pain control.  The report also
indicated Plaintiff's employment was terminated based on a
decision by management that "was not processed through the
medical staff committees" and was not based on "a formal chart
review . . . , and these were reported incidents only."

Although Data Bank procedures allow a practitioner to
challenge a report, MCMC only supplied its own address and did
not include Plaintiff's address when it made its Data Bank
report, which, in turn, delayed Plaintiff's receipt of a copy of
the report.  Plaintiff was informed by Data Bank that he could
not make any changes to the report.  In addition, Defendants
placed the report in the Data Bank under the designation
"Clinical Privileges Action," which Plaintiff asserts was
improper because MCMC never terminated his privileges.

On January 25, 2007, Plaintiff demanded MCMC withdraw the
report.  Shetterly obtained approval from Storby to withdraw the
report, and she did so on February 5, 2007.

Plaintiff also formally responded to the OBME regarding the
charges in MCMC's report, and the OBME conducted an
investigation.  After several months, the OBME exonerated
Plaintiff as to the seven charges of substandard care.

On July 27, 2007, Plaintiff filed a Complaint in this Court
on the basis of federal-question jurisdiction in which he asserts
claims against MCMC for (1) breach of his employment agreement;

(2) violation of the Federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 207; (3) unlawful exclusion under Oregon Revised Statute § 90.375; (4) unlawful entry under Oregon Revised Statute § 90.322; (5) national origin discrimination in violation of 42 U.S.C. § 2000e, *et seq.*, (Title VII); (6) religious discrimination in violation of Title VII; and (7) violation of Oregon Revised Statute § 659A.030 for discrimination based on race, national origin, and religion. Plaintiff also brings claims against all Defendants for (1) defamation and (2) race discrimination in violation of 42 U.S.C. § 1981. In addition, Plaintiff seeks a declaration that he is not required to return to MCMC a $20,000 signing bonus.

On June 19, 2009, Defendants filed a Motion for Partial Summary Judgment in which all Defendants request summary judgment as to Plaintiff's Claim Five for defamation and Plaintiff's Claim Six for race discrimination under § 1981. In addition, MCMC requests summary judgment as to Plaintiff's Claims Three and Four for unlawful exclusion and unlawful entry under Oregon Revised Statutes §§ 90.375 and 90.322 and as to Plaintiff's Claim Nine under Oregon Revised Statute § 659A.030 for discrimination.

On October 15, 2009, the Court heard oral argument on Defendants' Motion. Plaintiff at oral argument confirmed he was dismissing Claim Two for violations of FLSA and Claims Seven and Eight for violations of Title VII. In addition, the Court,

9  -  OPINION AND ORDER

noting the complexity and diversity of the remaining claims, concluded it would at this point address only Plaintiff's discrimination claims under § 1981 and Oregon Revised Statute § 659A.030, reserving the issue of Plaintiff's common-law defamation claims and claims for violation of Oregon Revised Statutes §§ 90.375 and 90.322 until after the discrimination claims were resolved.  The Court requested the parties to provide supplemental briefing by November 6, 2009, as to Plaintiff's § 1981 claim and took the matter under advisement on that date.

Accordingly, only Defendants' Motions as to Plaintiff's Claims Six and Nine are the subject of this Opinion and Order.


## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

10   -   OPINION AND ORDER

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary."  *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id.*

## DISCUSSION

Defendants contend they are entitled to summary judgment as to Plaintiff's Claim Six against all Defendants for race discrimination under § 1981 and Plaintiff's Claim Nine under Oregon Revised Statute § 659A.030 against MCMC for race, national origin, and religious discrimination.  In addition, Defendants object to certain evidence submitted by Plaintiff in response to Defendants' Motion.

**I.    Defendants' Objections to portions of the Declarations of Mark Ackley; Plaintiff; and Albert Brady, M.D., and to Plaintiff's Exhibits 6 and 14.**

**A.    Ackley Declaration.**

Defendants object to portions of Ackley's Declaration as irrelevant and inadmissible.  The portions of the Ackley Declaration objected to by Defendants pertain to Francis's alleged "unilateral attempt" to alter Plaintiff's employment contract.  The record, however, reflects the proposed change was to affect all of MCMC's hospitalists and, therefore, is not indicative of racial bias.

The Court, therefore, concludes testimony as to the alteration of Plaintiff's employment agreement is irrelevant to the issues before the Court at this time, and, therefore, the Court will not consider those portions of Ackley's Declaration.

**B.    Plaintiff's Declaration.**

Defendants object to portions of Plaintiff's Declaration on

12   -  OPINION AND ORDER

the grounds that the statements are conclusory, impermissibly speculative, legal conclusions, and/or inconsistent with Plaintiff's deposition testimony.

The Court concludes the record is sufficiently developed to reach a decision on Defendants' Motion as to Plaintiff's claims of discrimination without consideration of these contested statements. Accordingly, the Court will not consider the contested statements when resolving the issues currently before it and notes its exclusion of these materials does not prejudice Plaintiff in the Court's analysis.

**C.   Brady Declaration.**

Defendants object to Brady's Declaration on the ground that the parties agreed that neither side would be using expert testimony in support of any dispositive motions, and, therefore, the Court should not consider Brady's Declaration. In addition, Defendants contend Brady has not been qualified as an expert and is not competent to testify about MCMC or OBME processes, management of physicians, or administration of hospitals.

Defendants also object to Brady's statements that Dr. Nichol's representations with respect to Plaintiff's patient care are "disingenuous and prevarications." At oral argument, Plaintiff conceded these statements were cumulative of other material in the record and that he would not rely on them for purposes of summary judgment. Accordingly, the Court also will

13   -   OPINION AND ORDER

not consider these statements.

Plaintiff offers the remainder of Brady's Declaration to demonstrate that Defendants' procedures with respect to terminating Plaintiff's employment and to filing reports with the Data Bank and the OBME were improper.  The Court finds the record as to these issues is sufficiently developed to reach a decision without considering the remainder of Brady's Declaration. Accordingly, the Court will not consider Brady's Declaration at this time and reserves the issue as to whether Brady is qualified as an expert and competent to testify with respect to Plaintiff's remaining claims.  Again, the Court concludes exclusion of these materials from the Court's present consideration did not prejudice Plaintiff in the Court's analysis.

**D.  Plaintiff's Exhibits 6 and 14.**

Plaintiff's Exhibit 6 is general information from the website of the Equal Employment Opportunity Commission (EEOC). Plaintiff's Exhibit 14 consists of Chapter 13 of the EEOC Compliance Manual.  Plaintiff offers the EEOC documents to support his argument that evidence of national origin or religious discrimination is tantamount to racial discrimination. Defendants object to the EEOC documents on the grounds that they are irrelevant and, in any event, that they do not have the force of law.

The Court concludes these documents are not relevant to its consideration of Defendants' Motion for Partial Summary Judgment against Plaintiff's claims under § 1981, which prohibits discrimination on the basis of race. *See Sagana v. Tenorio*, 384 F.3d 731, 738 (9th Cir. 2004)(§ 1981 protects against discrimination on the basis of race). The Court also concludes the record is sufficiently developed to reach a decision with respect to Plaintiffs § 659A.030 claim against MCMC without consideration of these documents.

In summary, the Court does not find it necessary or helpful to Plaintiff, the nonmoving party, to rely on the contested portions of these Declarations and Exhibits to decide the issues currently before it. Although Plaintiff did not have nor did he request an opportunity to respond formally to Defendants' Objections, Plaintiff will be given an opportunity to do so if he requests before the remaining issues raised in Defendants' Motion are taken under advisement.

## II. Race discrimination under § 1981.

Plaintiff contends Defendants discriminated against him on the basis of his race in violation of § 1981 with respect to his employment contract and his lease agreement when they issued allegedly false reports regarding his patient care to the Data Bank and to the OBME, terminated his employment, and locked him out of his rental house.

15   -   OPINION AND ORDER

Section 1981 "protects the right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475 (2006)(quoting § 1981(a)).  Making and enforcing contracts includes "'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Id.* (quoting § 1981(b)).  "Any claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights." *Id.* at 479 (internal quotation omitted).  A plaintiff "cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes to make or enforce." *Id*.

**A.  Whether Defendants' report to the Data Bank and the OBME was a racially motivated impairment of Plaintiff's rights under an existing or proposed contract.**

Defendants contend Plaintiff does not state a claim under § 1981 because Plaintiff cannot establish that Defendants impaired any contractual rights when they made their report to the Data Bank and the OBME.

It is undisputed that Plaintiff's employment contract ended with his employment and that the Data Bank and OBME reports were made after the termination of Plaintiff's employment.  Plaintiff, however, contends Defendants did not comply with applicable laws

16  -  OPINION AND ORDER

in making these reports as required by the employment contract,
and, therefore, Defendants impaired Plaintiff's rights under the
employment contract.  Specifically, Plaintiff alleges the
applicable laws did not require Defendants to submit the reports.

The language of the employment contract that Plaintiff
relies on provides:

> It is expressly understood and acknowledged
> that a termination upon material breach may
> require [Defendants] to file a report with
> the [OBME] in accordance with the provisions
> of the Oregon Medical Practices Act and with
> the [Data Bank] pursuant to the provisions of
> the Federal Health Care Quality Improvement
> Act of 1986, as amended.

This provision merely constitutes an acknowledgment that reports
to the Data Bank and the OBME *may* be required under applicable
law in the event the contract is breached, but the provision does
not give Plaintiff any specific rights with respect to any such
reports.

On this record, therefore, the Court concludes the reports
made by Defendants did not impair Plaintiff's contractual rights
within the meaning of § 1981, and, therefore, Defendants are
entitled to summary judgment on Plaintiff's Claim Six to the
extent that claim is based on making those reports.

**B.    Whether Defendants' termination of Plaintiff's
       employment was a racially motivated impairment of
       Plaintiff's rights under his employment contract.**

Plaintiff contends Defendants discriminated against him in
violation of § 1981 because they impaired his rights under his

17  -  OPINION AND ORDER

employment contract with an improper motive when they terminated
his employment.  Defendants do not dispute Plaintiff has
contractual rights within the meaning of § 1981 with respect to
his employment contract.

The burden-shifting analysis of *McDonnell Douglas
Corporation v. Green*, 411 U.S. 792 (1973), and *Texas Department
of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to
claims of discrimination brought under § 1981.  *Surrell v. Cal.
Water Serv. Co.*, 518 F.3d 1097, 1105-06 (9th Cir. 2008).
Initially, therefore, the plaintiff has the burden to establish a
*prima facie* case of racial discrimination.  If he does so, the
burden shifts to the defendant to articulate a legitimate,
nondiscriminatory reason for its action.  If the defendant
carries its burden, "the presumption of discrimination 'drops out
of the picture,' and the plaintiff has the new burden of proving
the proffered reasons were a pretext for discrimination."
*Lindsey v. SLT Los Angeles*, 447 F.3d 1138, 1148 (9th Cir.
2006)(quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,
510-11 (1993)).  *See also McDonnell Douglas Corp.,* 411 U.S. at
802-04.  Even though the *McDonnell Douglas/Burdine* test shifts
the burden of producing evidence, it does not relieve a plaintiff
of his ultimate burden to prove discriminatory intent by a
preponderance of the evidence.  *Burdine*, 450 U.S. at 253
(citation omitted).

Defendants concede for purposes of their Motion that Plaintiff has established a *prima facie* case of discrimination with respect to his termination.  Nonetheless, Defendants assert they terminated Plaintiff's employment based on the complaints they received with respect to Plaintiff's patient care, which is a legitimate, nondiscriminatory reason.  Defendants contend Plaintiff has not presented sufficient evidence to show that Defendants' stated reason for terminating Plaintiff's employment is pretextual.

"A plaintiff can prove pretext in two ways:  (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Lindsey*, 447 F.3d at 1148 (quoting *Chuang v. Univ. Cal. Davis Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000)).  After "the plaintiff has established a *prima facie* case, the court should be cautious in considering whether to grant summary judgment. . . .  Summary judgment may be inappropriate once a *prima facie* case has been made." *Kelly v. Ironwood Comm. Inc.*, No. 08-CV-3058, WL 1220567, at *10 (D. Or. Apr. 30, 2009).  *See also Sischo-Nownejad v. Merced Comty. Coll. Dist.*, 934 F.2d 1104, 1110 (9th Cir. 1991)(citations omitted).  "Nevertheless, 'when evidence to refute the defendant's legitimate explanation is totally lacking,

19   -   OPINION AND ORDER

summary judgment is appropriate, even though the plaintiff may have established a minimal *prima facie* case." *Lindsey*, 447 F.3d at 1148.

### 1. Defendants Francis and MCMC.

Plaintiff asserts Francis was motivated by racial animus when he terminated Plaintiff's employment as illustrated by Francis's statement to MCMC's physician recruiter that "he did not want any more Arabs." Defendants, however, contend the fact that Francis is the person who hired Plaintiff gives rise to a strong inference that Francis did not act out of racial animus when he terminated Plaintiff.

Although Plaintiff asserts he was hired by Ackley, Defendants have submitted evidence that Francis was ultimately responsible for the hiring and firing of Plaintiff even though he acted on the advice of Ackley and Dr. Hodge when he hired Plaintiff in February and the advice of Dr. Nichol when he fired Plaintiff in October.

When "the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Coghlan v. Am. Seafoods Co., LLC*, 413 F.2d 1090, 1096 (9th Cir. 2005)(citing *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996)). The "same actor inference" also gives rise to an

inference that a defendant's nondiscriminatory reason for terminating a Plaintiff's employment is not pretextual. *Id*. Thus, based on the "same actor inference," a "strong inference" arises that Defendants' stated reason for terminating Plaintiff's employment is not pretextual.

Defendants also contend Francis's statement merely indicates Francis did not want MCMC to hire any more Arabs in the future and does not demonstrate a racial animus with respect to the Arabs who MCMC had already hired. The Court, however, finds Francis's statement regarding Arabs could suggest to rational jurors the existence of racial animus toward Plaintiff that, in turn, gives rise to an inference that Francis, acting out of racial animus, took the opportunity to reduce the number of Arabs on his staff when he was presented with the opportunity to do so. Accordingly, the Court concludes the "same actor inference" is not strong enough under these circumstances to overcome the inference of racial animus exhibited by Francis's statement. Moreover, the conduct of Francis as CEO of MCMC also is attributable to MCMC.

The Court, therefore, concludes on this record that Defendants are not entitled to summary judgment with respect to Plaintiff's Claim Six against Francis and MCMC to the extent that claim is based on Defendants' termination of Plaintiff's employment because Plaintiff has established a genuine issue of

material fact exists as to whether Francis and MCMC impaired Plaintiff's rights under his employment contract based on racial animus in violation of § 1981.

### 2. Dr. Nichol.

Plaintiff contends Dr. Nichol was motivated by racial animus when he recommended to Francis that Plaintiff's employment should be terminated as illustrated by Dr. Nichol's allegedly inappropriate remarks about halal food that were disrespectful to Plaintiff's Muslim religion. Plaintiff asserts the association between the Muslim religion and the Arab race in today's society is so strong that Dr. Nichol's allegedly disrespectful remarks about Plaintiff's religion constitute evidence of racial bias. Although Plaintiff does not cite to any cases that support his assertion, Defendant contends any evidence of Dr. Nichol's alleged religious bias is, in any event, irrelevant to Plaintiff's § 1981 claim because § 1981 protects only against discrimination based on race.

"To establish a claim under § 1981 the plaintiff must prove that he or she was subjected to intentional discrimination based upon his or her race, rather than solely on the basis of . . . their religion." *Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999). *See also Sagana*, 384 F.3d at 738 (§ 1981 "does not protect against discrimination on the basis of . . . religion"); *Johnson v. Riverside Healthcare Sys.*, 534

22  -  OPINION AND ORDER

F.3d 1116, 1123 (9th Cir. 2008)("section 1981 creates a cause of action only for those discriminated against on the basis of their race or ethnicity").

The Court acknowledges religion and race can be closely linked, but, as the Supreme Court stated in *Shaare Tefila Congregation v. Cobb*, § 1981 "was intended to protect from discrimination identifiable classes of persons who are subjected to discrimination solely because of their ancestry or ethnic characteristics."  481 U.S. 615, 618 (1987)(citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)).  Accordingly, evidence of a religious animus cannot, without more, give rise to an inference of racial animus to support a § 1981 claim.

Plaintiff also contends the OBME's ultimate exoneration of Plaintiff gives rise to an inference of racial animus on the part of Dr. Nichol.  There is not any evidence in the record, however, to suggest the information submitted by Dr. Nichol that was eventually included in the report to the OBME was inaccurate. Moreover, as Defendant points out, the fact that Plaintiff's patient care met the minimum necessary to avoid discipline by the OBME does not, on its own, give rise to an inference of racial animus, especially in light of the fact that there is not any evidence in the record that Dr. Nichol held Plaintiff to a higher standard than other doctors at the hospital.

23   -  OPINION AND ORDER

The Court, therefore, concludes on this record that
Defendants are entitled to summary judgment with respect to
Plaintiff's Claim Six against Dr. Nichol to the extent that claim
is based on Defendants' termination of Plaintiff's employment
because there is not a genuine issue of material fact as to
whether Dr. Nichol impaired Plaintiff's rights under his
employment contract based on a racial animus in violation of
§ 1981.

**C.   Whether Defendants' act of locking Plaintiff out of his
house was a racially motivated impairment of his rights
under the lease agreement.**

Plaintiff also contends Defendants discriminated against him
in violation of § 1981 because they impaired his rights under his
lease agreement with an improper motive when they locked him out
of the rental house.  Defendants do not dispute Plaintiff has
contractual rights within the meaning of § 1981 with respect to
his lease agreement.

The *McDonnell-Douglas* analysis applies to § 1981 claims
occurring in the context of commercial transactions.  *Lindsey*,
447 F.3d at 1144-45.  A plaintiff can establish a *prima facie*
case of discrimination under § 1981 by showing "(1) [he] is a
member of a protected class, (2) [he] attempted to [make or
enforce a] contract for certain services, and (3) [he] was denied
the right to contract for those services." *Id.* at 1145 (citing
*Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir.

2001)).  In addition, the plaintiff must demonstrate other
similarly situated people in unprotected classes were able to
make and/or enforce such a contract.  *Id.*  The Ninth Circuit has
cited with approval the Sixth Circuit's alternative test for
demonstrating racial bias when there is "no way of establishing
what treatment was accorded to [others]."  *Id.*  In a situation
where records are not kept and there is not any "paper trail
disclosing what treatment is given to similarly-situated others,"
a plaintiff can establish racial animus by showing the impairment
of the contractual right occurred "in a manner which a reasonable
person would find objectively discriminatory."  *Id*. (citing
*Christian*, 252 F.3d at 872).  As noted, after a plaintiff
establishes his *prima facie* case, the burden shifts to the
defendant to offer a legitimate, nondiscriminatory reason for its
actions.  If the defendant can offer such a reason, the burden
shifts back to the plaintiff to show the defendant's reason is
pretextual.  *Id*. at 1144.

> **1.    MCMC and Francis.**

Defendants concede for purposes of this Motion that
Plaintiff has established a *prima facie* case of discrimination as
to MCMC and Francis with respect to the act of changing the locks
on Plaintiff's house.  Defendants, however, assert they had a
legitimate, nondiscriminatory reason for changing the locks:
They feared for the security of the home and Plaintiff's

25   -  OPINION AND ORDER

belongings in Plaintiff's absence.

As noted, a plaintiff can prove pretext by showing the employer's proffered explanation is "unworthy of credence" because it is internally inconsistent or otherwise not believable or by showing that unlawful discrimination more likely motivated the employer. *Lindsey*, 447 F.3d at 1148 (citation omitted).

Here Plaintiff contends Defendants' explanation is not credible because the lease agreement provides the tenancy cannot be terminated without notice, Defendants' act of changing the locks was an extreme and unwarranted measure, and there were not any reports of safety problems in the area that would give rise to a concern for security of the home. To support his assertion of discriminatory conduct by Defendants, Plaintiff points to the previously referenced "direct evidence" of racial bias on the part of Francis, the person who authorized the changing of the locks.

According to Defendants, however, changing the locks was not an extreme measure because they had reasonable concern for the security of the home in Plaintiff's absence. In addition, Defendants state they were unable to contact Plaintiff by telephone before changing the locks, and, therefore, they notified Plaintiff by mail.

Defendants argue Plaintiff has not presented sufficient evidence under these circumstances to establish that Defendants'

26  -  OPINION AND ORDER

stated reason for changing the locks on the rental house was
pretextual.  Viewing the facts in the light most favorable to
Plaintiff as the Court must, the Court finds Plaintiff has
provided sufficient evidence to support an inference that
Defendants' stated reason for changing the locks is pretextual.

The Court, therefore, concludes on this record that
Defendants are not entitled to summary judgment with respect to
Plaintiff's Claim Six against MCMC and Francis to the extent that
claim is based on Defendants' act of changing the locks on
Plaintiff's rental house because Plaintiff has established a
genuine issue of material fact exists as to whether the stated
for Francis and MCMC to change the locks is pretextual.

**2.    Dr. Nichol.**

Defendant contends, and Plaintiff does not appear to
dispute, that the record does not reflect Dr. Nichol was involved
in any way with the decision to change the locks on the house
leased by Plaintiff, and, as noted, there is not any evidence in
the record as to racial animus on the part of Dr. Nichol.

The Court, therefore, concludes on this record that
Defendants are entitled to summary judgment with respect to
Plaintiff's Claim Six against Dr. Nichol to the extent that claim
is based on Defendants' act of changing the locks on Plaintiff's
rental house.

In summary, Defendants are entitled to summary judgment on

27   -  OPINION AND ORDER

Plaintiff's Claim Six against MCMC and Francis only as to the submission of the Data Bank and OBME reports and against Dr. Nichol in every respect.

**III. Plaintiff's Claim Nine for discrimination under Oregon Revised Statute § 659A.030.**

The Court notes Plaintiff's Claim Nine is against MCMC only and is a single claim under § 659A.030 based on three alternative theories of discrimination:  race, national origin, and religion. Accordingly, Plaintiff can defeat summary judgment on Claim Nine if he raises an issue of fact as to any one of these three theories.  Defendants, however, contend they are entitled to summary judgment on each of Plaintiff's theories under Claim Nine.

Oregon Revised Statute § 659A.030(1)(b) provides in pertinent part:

> It is an unlawful employment practice:
> (a) For an employer, because of an individual's race, religion, . . . [or] national origin, . . . to discriminate against the individual in compensation or in terms, conditions or privileges of employment.

A plaintiff must meet the same standards to prove a claim under § 659A.030(1)(b) that he must meet to establish a claim under Title VII.  *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 797-98 (9th Cir. 2003).  *See also Bernsten v. Dollar Tree Stores, Inc.*, No. CV 05-1964-MO, 2007 WL 756744, at *3 (D. Or. Mar. 6, 2007)("[The plaintiff's] discrimination claims under Title VII,

28    -  OPINION AND ORDER

42 U.S.C. § 1981, and Or. Rev. Stat. § 659A.030 are subject to the same legal standards, and facts sufficient to give rise to one claim are sufficient to give rise to all.")(citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)). *See also Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1412 (9th Cir. 1987); *Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 656 (1986)(the standard used to establish a *prima facie* case of discrimination under Oregon and federal law is essentially identical).

Although Oregon courts do not follow the *McDonnell Douglas* burden-shifting formula when analyzing claims under § 659A.030, *see Callan v. Confederation of Oregon School Administration*, 79 Or. App. 73, 78 n.3 (1986), this Court applies the *McDonnell Douglas* burden-shifting analysis to claims brought in federal court under § 659A.030. *See Snead v. Met. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1092 (9th Cir. 2001)(the *McDonnell Douglas* burden-shifting framework is federal procedural law, and, therefore, federal courts must apply it to discrimination claims under § 659A.030 brought in federal court). *See also Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987)("The *McDonnell-Douglas* order and allocation of proof that governs disparate treatment claims also governs retaliation claims."); *Aldridge v. Yamhill County*, No. CV. 05-1257-PK, 2006 WL 1788178, at *5 n.1 (D. Or. June 23, 2006)("Although Oregon courts analyzing claims

29   -   OPINION AND ORDER

under Or. Rev. Stat. § 659A.030 have rejected the *McDonnell Douglas* burden-shifting approach, it is nonetheless appropriate for federal courts to use the *McDonnell Douglas* approach in state law claims."); *Williams v. Fed. Express Corp.*, 211 F. Supp. 2d 1257, 1264 (D. Or. 2002)("In a retaliation case, the burden shifting scheme is similar to that in a discrimination case, and applies to claims under both state and federal law.").

**A.    Race discrimination.**

As noted, Plaintiff contends Defendants discriminated against him on the basis of his race when they terminated his employment, sent reports regarding complaints against him to the Data Bank and to the OBME, and changed the locks on his house.

**1.    Termination of Plaintiff's employment.**

The Court already found Plaintiff has established that a genuine issue of material fact exists as to whether MCMC's stated reason for terminating Plaintiff's employment was pretextual.

**2.    Reports to the Data Bank and to the OBME.**

Unlike under § 1981, Plaintiff does not need to show Defendants impaired his rights under a contract based on an improper motive to establish a *prima facie* case of discrimination under § 659A.030. Accordingly, Defendants concede Plaintiff has established a *prima facie* case of discrimination under § 659A.030 with respect to Defendants' reports to the Data Bank and the

30   -   OPINION AND ORDER

OBME.  Defendants, however, contend they filed the reports on the
recommendation of Shetterly, the medical staff coordinator, and
Storby, her supervisor, because those individuals believed the
reports were required by law.  Plaintiff, nevertheless, maintains
Defendants' stated reason for filing the reports is pretextual.

Even if Shetterly and Storby held a good faith belief
that the reports were required and Francis merely acted on their
recommendation as alleged by Defendants, it is undisputed that
Francis made the final decision to file the reports.  Plaintiff
has offered evidence that raises an inference that Francis, as
the final decision-maker, could have prevented the reports from
being filed but chose not to do so.  Viewing these facts in the
light most favorable to Plaintiff, the Court concludes Plaintiff
has established a genuine issue of material fact exists as to
whether Defendants filed the Data Bank and OBME reports based on
the improper motive of racial animus within the meaning of
§ 659A.030.

**3.    Changing the locks on the rental house.**

The Court already found Plaintiff has established a
genuine issue of material fact exists as to whether Defendants'
stated reason for their act of changing the locks on Plaintiff's
rental house is pretextual.  Unlike § 1981, however, § 659A.030
is limited to discrimination within the employment relationship.

Here the record is not clear as to whether the rental

31  -  OPINION AND ORDER

agreement constituted a privilege of employment with MCMC or was
separate from it.  For example, MCMC only leased rental homes to
its employees, and, therefore, the rental of such a home could be
considered a privilege of employment under § 659A.030.  Thus, any
interference with the lease during the employment relationship
could give rise to a claim under § 659A.030 if "the interference"
was done with a discriminatory motive.  Although Defendants
changed the locks on the house after Defendants terminated
Plaintiff's employment, Plaintiff, nonetheless, alleges
Defendants' act was based on a discriminatory motive in violation
of § 659A.030.  If the rental, however, was a privilege of the
employment relationship and, therefore, expired with it,
Defendants' subsequent act of changing the locks could not have
been discrimination as to or interference with a privilege of
Plaintiff's employment because he was not an employee at the time
the locks were changed.  As noted, § 659A.030 on its face applies
only in the context of an employment relationship.

        Nevertheless, the rental also was subject to a lease
agreement.  That agreement provides the lease can be terminated
for failure to pay rent, but, however, it does not provide the
lease terminates when the employment relationship with MCMC ends.
If the rental was governed solely by the lease agreement and was
not contingent on Plaintiff's employment at MCMC, the rental
would not be a privilege of employment within the meaning of

32  -  OPINION AND ORDER

§ 659A.030, and, therefore, § 659A.030 would not govern.  Thus, in either line of reasoning, Defendants' act of changing the locks on the rental house was not an act subject to the protections of § 659A.030.

   **B.   National origin discrimination.**

   Defendants contend it is entitled to summary judgment on Plaintiff's Claim Nine against MCMC for national origin discrimination under § 659A.030 because there is not any evidence in the record that anyone at MCMC was biased toward Egyptians.

   Defendants assert the definition of national origin is limited to country of birth and correctly asserts there is not any evidence in the record that raises an inference of animus on the part of anyone at MCMC towards individuals who were born in Egypt.  Plaintiff, nonetheless, argues his national origin includes his identity as an Arab and a Muslim.

   As noted, § 659A.030 prohibits discrimination on the basis of religion, race, or national origin.  It makes little sense, therefore, to read the term "national origin" in the statute to include race and religion because § 659A.030 specifically prohibits discrimination on each of these grounds separately. *See State v. Stamper*, 197 Or. App. 413, 418 (2005)(Oregon statutes are construed so as to avoid meaningless surplusage). The Court, therefore, concludes evidence of race or religious discrimination cannot give rise to an inference of national

33  -  OPINION AND ORDER

origin discrimination under § 659A.030 under these circumstances.

## C. Religious discrimination.

Plaintiff alleges Defendants discriminated against him on the basis of his religion when Dr. Nichol disciplined Plaintiff for attending prayers, made remarks in an inappropriate tone about Muslim food practices, and called Plaintiff on Eid. Defendants concede Plaintiff has established a *prima facie* case of religious discrimination under § 659.030.

Defendants, however, contend Dr. Nichol "wrote up" Plaintiff because he failed to provide adequate notice to Dr. Nichol that he needed his shift covered; *i.e.*, Dr. Nichol did not write him up for attending prayers. To support their position, Defendants point out that another Muslim doctor often arranged in advance with Dr. Nichol to attend Friday prayers and did not receive any criticism or disciplinary measures for doing so.

Defendants also contend the "inappropriate" tone Dr. Nichol allegedly used when describing Muslim food practices is merely a subjective impression on Plaintiff's part as affirmed by Plaintiff in his deposition. Plaintiff's subjective impression of Dr. Nichol's tone without more cannot support an objective inference of religious animus. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006). Moreover, a plaintiff's belief that a supervisor's tone of voice indicates animus towards a protected class is not "substantial and specific" evidence of

34  -  OPINION AND ORDER

discriminatory animus sufficient to defeat summary judgment. *Anthoine v. North Cent. Counties Consortium*, 571 F. Supp. 2d 1173, 1189 (E.D. Cal. 2008). *See also Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001)(plaintiffs need to present more than their own subjective beliefs).

Defendants also contend they did not have any reason to believe Plaintiff would be offended by being called on Eid because Plaintiff was actually scheduled to work on that day and had worked on Eid in the past at another hospital.

On this record, Plaintiff has not offered any evidence to show Defendants' stated legitimate, nondiscriminatory reasons for Dr. Nichol's acts are pretextual except for Plaintiff's subjective assessments.

In summary, Defendants are entitled to summary judgment on Plaintiff's Claim Nine under § 659A.030 against MCMC for race discrimination only as to the act of changing the locks on the rental house, and Defendants also are entitled to summary judgment on Plaintiff's Claim Nine against MCMC for national origin and religious discrimination.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion as follows:

35  -  OPINION AND ORDER

1.    Plaintiff's Claim Six against Defendants for racial discrimination in violation of 42 U.S.C. § 1981.

a.    **GRANTS** Defendants' Motion to the extent that Plaintiff's claim is based on Defendants' submission of reports about Plaintiff to the National Practitioner's Data Bank and the OBME;

b.    **DENIES** Defendants' Motion to the extent that Plaintiff's claim is against Francis and MCMC on the ground that they impaired Plaintiff's rights under his employment contract and lease agreement; and

c.    **GRANTS** Defendants' Motion to the extent that Plaintiff's claim is against Dr. Nichol on the ground that he impaired of Plaintiff's rights with respect to his employment contract and lease agreement.

2.    Plaintiff's Claim Nine against MCMC for racial, national origin, and religious discrimination under Oregon Revised Statute § 659A.030.

a.    **GRANTS** Defendant's Motion to the extent that Plaintiff's claim for racial discrimination arises out of Defendants' termination of Plaintiff's employment and the act of changing the locks on his rental home;

b.    **DENIES** Defendants' Motion to the extent that Plaintiff's claim for race discrimination arises out of

36   -  OPINION AND ORDER

Defendants' submission of reports to the Data Bank and the OBME; and

       c.   **GRANTS** Defendants' Motion to the extent that Plaintiff's claim is based on national origin and religious discrimination.

The Court directs the parties to confer concerning the most efficient means for the Court to resolve the remaining issues raised by Defendants' Motion for Partial Summary Judgment and to provide a joint proposal to the Court no earlier than December 1, 2009, addressing particularly whether the parties believe additional briefing and/or oral argument is needed.

IT IS SO ORDERED.

DATED this 20th day of November, 2009.


                         /s/ Anna J. Brown
                         _____
                         ANNA J. BROWN
                         United States District Judge